**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

FADIA GABRIEL, et al

           Plaintiffs,

vs.                            Case No. 3:06-cv-917-J-32HTS

UNITED STATES OF AMERICA

           Defendant.

_____

## ORDER[1]

This Federal Tort Claims Act ("FTCA") case, arising out of personal injuries sustained at a national monument, is before the Court on Defendant United States' Motion to Dismiss (Doc. 21) and Plaintiffs Fadia Gabriel and Jason Gabriel's Response thereto. (Doc. 22.) The Court heard oral argument on this motion June 19, 2008, the record of which is incorporated by reference. (Doc. 26.) Following the hearing, the parties submitted supplemental filings. (Docs. 29, 32.)

### I.  Facts

#### a.  The Injury and lawsuit

In their memorandum, Plaintiffs succinctly summarize the facts surrounding the

_____

[1] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically.  However, it is intended to decide the motion addressed herein and is not intended for official publication or to serve as precedent.

injury:

> On the Night of October 8, 2005, Fadia Gabriel, her husband, Jason Gabriel, and Jason Gabriel's 8 year old sister visited the City of St. Augustine. After dinner, the Gabriels purchased ice cream and decided to eat it while seated on benches located on the grounds of the Castillo de San Marcos National Monument. Fadia Gabriel had never before been on the grounds or visited this monument. By the time they finished their ice cream, it had become completely dark. As the plaintiffs got up to leave, Fadia Gabriel took several steps forward across a grassy area in front of the bench she was sitting [on] and, unexpectedly, stepped off a several foot drop off, striking her face on the sidewalk below. She was rendered unconscious and rescue was called. She was life flighted to Jacksonville, Florida where she was found to have suffered facial fractures and underwent surgery.

(Doc. 22 at 1-2.) Based on these events, Plaintiffs brought this lawsuit under the FTCA sounding in negligence.

### b. The Castillo de San Marcos National Monument

The Castillo de San Marcos National Monument ("the Castillo") is located on about 20 acres near Matanzas Bay in St. Augustine, Florida and "contains the oldest remaining European fortification in the United States." (Doc. 21 at Ex. A -1 p. 8.) The fort itself is a "bastioned masonry fortification" that is "built around a square plaza" with "diamond-shaped bastions projecting outward at each corner." (Id. at 15.) The Castillo walls are thirty feet high, and "ten to fourteen feet thick at the base, and five feet thick at the top. (Id. at 16.)

The Castillo incorporates a number of historic features in addition to the fort itself including a moat, ravelin, covered way, glacis, Cubo Line and City Gate. (Id. at

-2-

15.)  "The covered way is the flat, grassy area between the glacis and the moat; a masonry wall five feet high separates it from the glacis.  The glacis is the open, sloped area beyond the covered way that stretches into the landscape." (Id. at 16.)  The benches on which Plaintiffs sat prior to the injury are located on the glacis.  (Doc. 21 at Ex. A ¶ 5.)  At the specific location where the injury occurred, the glacis is separated from the sidewalk by a retaining wall.  (Id.)  The grounds of the Castillo are closed between midnight and 5:30 a.m.  (Doc. 22-2 at 22.)

## II.  Legal Standard

Under Federal Rule of Civil Procedure 12(b)(1), an action must be dismissed if the Court lacks subject matter jurisdiction.  See Stanley v. Central Intelligence Agency, 639 F.2d 1146, 1157 (5th Cir. 1981).  "[A] court must first determine whether it has proper subject matter jurisdiction before addressing the substantive issues." Taylor v. Appleton, 30 F.3d 1365, 1366 (11th Cir. 1994).  If jurisdiction is found to be lacking, the Court cannot proceed at all; its sole remaining duty is to state that it lacks jurisdiction and dismiss the case.  See Steel Co. v. Citizens for a Better Env't., 523 U.S. 83, 94 (1998); see also Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 410 (11th Cir. 1999) ("Once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue.").

Challenges to subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) can come in two forms, "facial" and "factual" attacks.

-3-

> Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion. . . . Factual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings. . . . In resolving a factual attack, the district court may consider extrinsic evidence such as testimony and affidavits.

Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003) (citing Lawrence v. Dunbar, 919 F.2d 1525, 1528-29 (11th Cir. 1990)).  The Court considers this a factual attack because both parties proffer extrinsic evidence for the Court's consideration. "In the face of a factual challenge to subject matter jurisdiction, the burden is on the plaintiff to prove that jurisdiction exists." OSI, Inc. v. United States, 285 F.3d 947, 951 (11th Cir. 2002) (citing Thomson v. Gaskill, 315 U.S. 442, 446 (1942)).  When a defendant properly challenges subject matter jurisdiction under Rule 12(b)(1), the court may consider matters outside the pleadings and is free to weigh the evidence concerning jurisdiction so long as the issues do not implicate the merits of plaintiffs' action.  See Morrison, 323 F.3d at 924-25.

## III. Discussion

While the FTCA expressly waives the government's sovereign immunity in tort actions, that waiver is limited by several statutory exceptions.  Here, the government has moved to dismiss this case pursuant to the discretionary function exception to the FTCA.  See 28 U.S.C. § 2680(a).  Where applicable, the discretionary function exception deprives the court of subject matter jurisdiction and a dismissal pursuant

to Federal Rule of Civil Procedure 12(b)(1) is required.  See e.g. Monzon v. United States, 253 F.3d 567 (11th Cir. 2001).  The discretionary function exception applies to:

> [a]ny claim . . . based upon the exercise or performance or failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).  This exception to federal liability "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." United States v. Varig Airlines, 467 U.S. 797, 808 (1984).

The Eleventh Circuit applies a two-part test to determine whether the discretionary function exception applies to the challenged action in a given case. First, courts consider the nature of the conduct involved and determine whether it involves an element of judgment or choice.  See OSI, Inc., 285 F.3d at 950.  "The discretionary function exception will not apply 'if a federal statute, regulation, or policy specifically prescribes the course of action a government employee must follow.'" See O'Ferrell v. United States, 253 F.3d 1257, 1266 (11th Cir. 2001) (quoting United States v. Gaubert, 499 U.S. 315, 322 (1991)) .  Second, courts look to "whether that judgment is of the kind that the discretionary function exception was designed to shield."  Gaubert, 499 U.S. at 322-23.  "[T]he purpose of the discretionary function exception is to prevent judicial 'second-guessing' of legislative and administrative

decisions grounded in social, economic, and political policy through the medium of an action in tort." Cranford v. United States, 466 F.3d 955, 958 (11th Cir. 2006) (internal marks omitted).  There is no requirement that the agency official actually weigh policy choices for the exception to apply; if the challenged action is one susceptible to policy analysis, then the government is immune from suit.  See Hughes v. United States, 110 F.3d 765, 768 (11th Cir. 1998).

However, before applying this test, the specific action challenged by Plaintiffs must be identified.  See Autery v. United States, 992 F.2d 1523, 1527 (11th Cir. 1993).  Here, Plaintiffs allege that "defendant knew, or should have known, of a dangerous condition consisting of an unguarded drop off between a concrete retaining wall and a sidewalk," and that defendant was negligent in failing to provide sufficient lighting in the area, erect a guardrail in front of the drop, or warn of the danger.  See Doc. 23 at 8.

### a.  The applicable statutes and guidelines provided the government with discretion on what safety measures to adopt at the Castillo.

The first element of the discretionary function analysis is satisfied because the government's decision not to enact specific safety measures warning of the drop near the retaining wall involved an element of judgment or choice.  "Only if a federal statute, regulation, or policy specifically prescribes a course of action, embodying a fixed or readily ascertainable standard, will a government employee's conduct not fall

within the discretionary function exception." See Autery, 992 F.2d at 1529 (internal

citations and quotations omitted).  There is no such mandatory directive or authority

applicable to Park Service employees in this case; in fact, the Park Service enjoys

vast discretion concerning safety issues at the National Parks.

The authority of the Park Service is derived from the 1916 Park Service Organic

Act.  16 U.S.C. § 1.  That act created the Park Service and charged it with conserving

"the scenery and the natural and historic objects and the wild life therein and to

provide for the enjoyment of the same in such manner and by such means as will

leave them unimpaired for the enjoyment of future generations."  Id.  The Park Service

has adopted guidelines in furtherance of that mission and those guidelines have been

provided to the Court as exhibits in support of the motion to dismiss.  Specifically, the

Management Policies 2001 manual provides:

> The saving of human life will take precedence over all other
> management actions as the Park Service strives to protect human life
> and provide injury-free visits.  The Service will do this within the
> constraints of the 1916 Organic Act.  The primary–and very
> substantial–constraint imposed by the Organic Act is that discretionary
> management activities may be undertaken only to the extent they will not
> impair park resources and values.
>
> . . .
>
> These management polices do not impose park specific visitor safety
> prescriptions.  The means by which public safety concerns are to be
> addressed is left to the decision of superintendents and other decision
> makers at the park level, who must work within the limits of funding and
> staffing.  Examples include decision about whether to install warning
> signs or artificial lighting . . . or install guardrails and fences . . . .  Some

> forms of visitor safeguards–such as fences, railings and paved walking surfaces–typically found in other public venues may not be appropriate in a national park setting.

(Doc. 21 at Ex. A ¶ 8, Ex A-3 ¶ 8.2.5.1.)  Additional regulations give Park Service management considerable discretion regarding the placement of signs and the use of artificial lighting in national parks.  (Doc 21 at Ex. A ¶ 10; Ex. A-5 at 1-1; Ex. A-3 § 4.10.)  The plain language of these guidelines indicates that the Park Service has discretion in how to address safety concerns at the Castillo, while determining some measures "may not be appropriate" in a specific location.

Plaintiffs attempt to overcome these regulations by pointing to specific policies and procedures at the Castillo.  According to the deposition testimony of Gordie Wilson, Superintendent of the Castillo, a safety committee at the Castillo sometimes conducts "hazard hunts" on the Castillo grounds in which employees "look for things that could represent unsafe conditions."  (Doc. 22-2 at 10.)  A report is usually generated after these events and "if there's something that's broken or needs to be repaired, if there's a light bulb out or something that's not functioning that could impact visitor or employee safety, then they'll usually fix it."  (Id.)  Plaintiffs argue that once the Castillo management decided to begin conducting these "hazard hunts," a duty was created to perform the hunts in a non-negligent manager.  According to Plaintiffs, that duty would therefore divest the Park Service of the discretion necessary for the discretionary function exception to shield the government from liability.

-8-

Plaintiffs' argument misses the mark. The "hazard hunts" are not the challenged action in this case. Plaintiffs are not alleging that the Park Service negligently failed to inspect for hazards; rather that the Park Service failed to protect the public from a particular hazard. As described by Wilson, the "hazard hunts" may have required employees to identify unsafe conditions. Contrary to Plaintiffs' assertions however, those hunts did not require that specific conditions, if found, be corrected. Furthermore, the example used by Wilson to describe the purpose of the hazard hunts, a burnt out light bulb, is much different than the permanent and fixed part of the Castillo grounds that is at issue in this case. "Whether a policy establishes a mandatory requirement so as to deprive government employees of discretion depends on the terms of the particular policy at issue." Autery, 992 F.2d at 1529.[2] In Autery, the Park Service's tree inspection plan to identify and remove hazardous trees failed to remove the element of choice from the government because it "did not compel park employees to inspect certain trees on certain days or remove a particular

_____

[2] Many of the cases cited by Plaintiffs are older cases that predated the Supreme Court's Gaubert decision. In Gaubert, the Supreme Court rejected the false dichotomy suggested by earlier cases between governmental decisions made at the operational level and those made at the policy-making level. See Autery, 992 F.2d at 1527-28 (stating that plaintiff's reliance on older cases was misplaced because the holdings in those cases rested on a distinction between decisions made at the operational or management level and decisions made at the policy or planning level). For example, the Eleventh Circuit has said that Plaintiffs' interpretation of Indian Towing v. Co v. United States, 350 U.S. 61 (1955), "has been severely undercut, if not altogether disavowed, by the Supreme Court in Gaubert." Ochran v. United States, 117 F.3d 495, 505 (11th Cir. 1997).

number of trees per week."  Id.  The hazard hunt instituted by the safety committee in this case was of a similarly unstructured nature and did not require the Park Service to take any specific action.  Plaintiffs are alleging negligence based on the failure of the Park Service to provide lighting, signage, and/or guardrails over a known hazard, not their failure to use due care while performing intermittent "hazard hunts."  Accordingly the first part of the discretionary function exception is met.

**b. The government's decision was grounded in considerations of public policy.**

Because no statute, regulation or policy required the Park Service to provide specific, relevant safety measures at the Castillo, the Court must now determine whether the challenged action was the type of conduct "that the discretionary function exception was designed to shield."  Gaubert, 499 U.S. at 321.  Courts presume that an action is grounded in policy when an applicable statute, regulation or agency guidelines allows a government employee to exercise discretion in that matter.  Id. at 324.  "Generally, courts have held that decisions about what safety measures to employ in national parks and how to execute them involve balancing the same considerations that inform all policy decisions regarding the management of national parks: safety, aesthetics, environmental impact, and available financial resources."  See Autery, 992 F.2d at 1530.

First, this Court must presume that a weighing of policy occurred because of

-10-

the statutory and regulatory discretion given to Park Service employees in the safety arena.  See Gaubert, 499 U.S. at 324.  Nothing in the record rebuts that presumption in this case.   In his deposition, Wilson said the Park Service does not provide illumination of the Castillo grounds after dark because  it would "detract from the historic features that [the Park Service] is there to preserve." (Doc. 22-2 at 28.)  While not specifically asked about signs or guardrails, Wilson also indicated his hesitancy to put modern features on the Castillo grounds because it would be "misrepresenting the historic features that you're there to preserve."  (Id.)  Plaintiffs may not agree with the Park Service's ultimate decision.  However, "[o]nce it has been determined that the discretionary function exception applies, the negligence of the government is irrelevant." Downs v. United States, No. 06-20861-CIV-HUCK/SIMONTON, 2007 WL 842136, *5 (S.D. Fla. Mar. 20, 2007).

Plaintiffs argue that the required balancing of policy implications did not occur in this case, placing great emphasis on Wilson's subjective intent and personal knowledge of the hazard as expressed in his deposition.  In their brief, Plaintiffs stated that "Mr. Wilson was himself put on notice, by virtue of a visitor reporting a prior similar fall, of the existence of this dangerous condition and the need to take some action to correct it or to warn of it.  His decision not to do so was a deviation from existing safety considerations and involved no balancing of policy considerations." (Doc. 22 at 10.)   While the Court disagrees with Plaintiffs' characterization of that

testimony, this analysis is irrelevant. "The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis." Gaubert, 499 U.S. at 325. It is true that Wilson did have prior notice of an individual falling in the same location as Ms. Gabriel ten years earlier. (Doc. 22-2 at 43.) However, so long as the challenged action is of the type susceptible to policy analysis, this does not matter; the discretionary function exception protects the Park Services' decision not to react to the earlier incident.

    "The decision whether and how to post warning signs in historic areas and/or natural preserves requires [the Park Service] to weigh a number of policy judgments." Davis v. United States, 918 F.Supp 368, 373 (N.D. Fla. 1996) (holding that the government's decision not to post warning signs at a national park was a decision protected by the discretionary function exception). Courts have repeatedly dismissed factually similar FTCA cases based on the discretionary function exception. This includes decisions on warning signs, Elder v. United States, 312 F.3d 1172 (10th Cir. 2002), artificial lighting, Sharp v. United States, 401 F.3d 440 (6th Cir. 2005), and guardrails, Zuk v. United States, 698 F. Supp 1577, 1579-80 (S.D. Fla. 1988), in national parks.

    The cases cited by Plaintiffs in opposition are distinguishable and all are from other circuits. This is perhaps understandable, as "the Eleventh Circuit has found the

-12-

discretionary function exception to be applicable in almost every case it has considered since Gaubert." See Marbulk Shipping, Inc. v Martin-Marietta Materials, Inc., 271 F. Supp 2d 1374, 1378 (S.D. Ala. 2003) (listing cases); see also Cranford, 466 F.3d at 960. Many cases that Plaintiffs rely on in their response involved discretionary decisions almost wholly unrelated to the mission of the federal agency involved and others rested on a failure of proof by the government. See e.g. Gotha v. United States, 115 F.3d 176, 181-83 (3rd Cir. 1997) (holding that the discretionary function exception was inapplicable to the Navy's failure to provide a stairway on a steep path because the challenged action was "about as far removed from the policies applicable to the Navy's mission as it is possible to get."); Duke v. Dep't of Agriculture, 131 F.3d 1407, 1412 (10th Cir. 1997) ("[O]ur review of the record reveals no evidence by the government of any social or political justification."). Here, the challenged decision of the Park Service goes straight to the Services' core mission of managing national monuments.

Plaintiffs best case is perhaps Cestorano v. United States, 211 F.3d 749 (3rd Cir. 2000). The plaintiff in Cestorano brought a wrongful death suit against the United States alleging that the government was negligent for failing to provide adequate lighting or warn of known dangers in an evening parking lot of a national park. Id. at 751-52. While the lot was not an official parking lot, the Park Service did maintain some lighting in the lot. Id. at 752. Reversing the district court, the court of appeals

found that the discretionary function exception to the FTCA did not apply in that case. The court reasoned that the Park Service "fail[ed] to show how providing some lighting, but not more, is grounded in the policy objectives with respect to the management of the National Historic Site." Id. at 757.  The court stated that the Park Service did not argue that providing only some lighting in the unofficial lot was rooted in the policy objectives of maintaining an historic site and there was no "rational nexus between the National Park Service's lighting or warning decisions (or non-decisions) and social, economic and political concerns." Id. at 759.

Unlike in Cestorano, the government here has argued that its lighting, warning and guardrail decisions are rooted in a desire to maintain the Castillo in an historically accurate way.  In Cestorano, the Park Service was already providing some lighting to the unofficial parking lot and there was no showing that providing some lighting, but not more lighting, was a policy decision that the discretionary function exception was designed to protect.  The difference between the efforts of the Park Service in this case and Cestorano is that here the Park Service has put forward evidence that their decision not to provide more lighting was grounded in policy; Wilson stated that "excessive lighting" would detract from "the story we're trying to tell" at the Castillo. (Doc. 22-2 at 40.)  The Park Service has also supported the decision not to warn of the drop off through signs or guardrails; Wilson stated in his deposition that he sought to refrain, when possible, from placing inauthentic materials on the grounds.  (Id.)

While Plaintiffs may believe that the Park Service's decision not to provide more lighting (or other safety measures) was wrong, negligent or even an abuse of discretion, the discretionary function exception is designed to protect these types of decisions.[3]   The FTCA does not allow Plaintiffs or this Court to second-guess the government's decisions in this regard.  This case is due to be dismissed for lack of subject matter jurisdiction.[4]  Accordingly, it is hereby

     **ORDERED:**

     1.  Defendant United States' Motion to Dismiss (Doc. 21) is **GRANTED WITH PREJUDICE**.

     2.  The Clerk should close the file.

     **DONE AND ORDERED** at Jacksonville, Florida, this 2nd day of January, 2009.

_____
TIMOTHY J. CORRIGAN
United States District Judge

jcd.
Copies to:
Counsel of Record

_____

[3]   In an attempt to analogize <u>Cestorano</u> to this case, Plaintiffs point out that the Park Service also provides some lighting on the grounds of the Castillo, to wit, lighting up the fort from inside the moat.  Plaintiffs also argue that some of the modifications specified in the complaint could be done quite easily and are not even on the fort itself.   For the purposes of the discretionary function analysis, these facts are irrelevant.

[4]   Accordingly, the Court does not reach the government's alternative argument that Mr. Gabriel's loss of consortium claim must be dismissed for failure to exhaust administrative remedies.

-15-